The next matter on the docket this morning is agenda number 8, number 1, 2, 5, 5, 1, 3. Alfred Evans Jr. v. The Cook County State's Attorney, Illinois State Police. Mr. Evans, please proceed. May it please the Court, I'm Brian Chavez. I'm joined with co-counsel David Siegel. And we represent Mr. Evans, who is present in person. Mr. Evans lost his firearm rights due to a felony conviction for manufacturing delivery of controlled substance in the early 90s. He would like to restore those rights. The mechanism to do so is Section 10 of the FOID Act. Section 10C lays out four elements that Mr. Evans must satisfy in order to regain those firearm rights. There is no dispute with respect to C1 and C2. C3, the First Appellate District concluded that Mr. Evans also satisfied. We'll speak on that in a minute. Section C4, the Court, the First District Court concluded that he did not satisfy. And that's where I'll start, because there's seemingly, based on the briefs, the most agreement with respect to this element. Section C4 states that grant and relief cannot be contrary to Federal law. The Federal law in question would be the Gun Control Act, which states that if someone is convicted of an offense punishable by more than one year, then that person cannot own or possess a firearm unless that person's civil rights are restored. Now, the First District, viewing the FOID Act with respect to the Gun Control Act, taking them together, basically said, Illinois law says we can only grant it if it's okay with Federal law. Federal law says we can only grant it if it's okay with Illinois law. This is a Catch-22. There's nothing we can do. This is an erroneous and, frankly, absurd conclusion. Based on the briefing, it seems like everyone, at least on this side of the bench, agrees that this is an absurd conclusion. Even the First District, in their written opinion, stated that this is an absurd result. But whereas they say that their hands are tied, that this is the only conclusion that they can come to, we disagree. Should the Court ignore the subsections? I'm sorry, which subsection? 10C4. Oh, no, not at all. It's still relevant. But we believe that this Court stated properly in the Johnson decision that, to summarize the findings there, one, firearms are a civil, the ability to own and possess a firearm is a civil right. Two, that Section 10 is the mechanism for restoring that civil right. And three, Section 10 relief is enough to overcome the Gun Control Act prohibitor. So that's why we would ask that this Court overturns the First District with respect to C4. Now, with respect to C3, it states that granting relief cannot be contrary to the public interest. The standard of review for that is dependent, again, based on the briefing, is dependent on the evidence that is used. Seemingly, we agree that if the entirety of the evidence is documentary, then it would be de novo review. If there was live witness testimony or questions of facts, then it would be manifest way of the evidence. The statute itself talks about that the burden of proof is on the applicant. Yes. And the measure of proof is the court's satisfaction. Yes. I have an odd expression. I don't see that very much. Not components of the evidence, certainly not reasonable doubt, not clear and convincing. Court's satisfaction. How are we to interpret that? Is it a discretionary decision that's reviewable for abuse of discretion, or is what is it? I would say that we still, it would, while it's somewhat clumsily written, that it still falls within the purview of the standard, the general standards that we use in reviewing decisions. So by the fact that all the evidence in this case was documentary, that this Court How do we know that? Based on the record. Do we have a transcript? We don't have a transcript of the oral argument, but there is no evidence that evidentiary hearing even took place. There's an order on C-282 and 283 that schedules oral arguments based on the briefs, but there's nothing that states that there's an evidentiary hearing to occur. Like Mr. Evans, as he's put in his appellate brief, he didn't even know about the oral arguments. He didn't find out about it until after the fact. He did not attend. He did not testify. So as far as what evidence was that exists, it's entirely in the record. Do we know why the Court indicated that the measure of proof that the applicant had not met the measure of proof of the Court's satisfaction? I'm sorry? Do we have anything on the record as to why the Court said the Court was not satisfied? No. The entirety of the Court's decision was the order just saying that it didn't satisfy Mr. Evans didn't satisfy that it was. So we don't know. Exactly. But the first district's decision, they got it right as far as whether Mr. Evans satisfies this. I mean, they concluded that de novo review is appropriate, but even said in dictum that if they used the manifest way of the evidence standard that Mr. Evans still prevails. I mean, if they highlight appropriately that his case is about 30 years old, it's nonviolent, he's married to a wonderful person, he's got kids that he's active in raising, he has a business, he has a very specific need for personal safety that's tied to this business for why he needs firearm rights. And in the State's brief as far as countering how he doesn't satisfy the public interest, they talk about his criminal history and, you know, statistics as far as other people, recidivism. Now, statistics are great for extrapolating larger truths out of a messy cascade of data points, but they don't tell you where each data point lands. Like, this is an individualized process. And Mr. Evans is a real person with a history, a narrative, you know, a story of rehabilitation Did he appear before the trial judge? I'm sorry, I have a lot of questions about what happened in the hearing. Did he appear in the court? No, he did not. Never at any point? Oh, well, I don't know if he appeared prior to the oral arguments. I know that he did not appear at the oral arguments. My understanding is that he never testified to the court in any fashion. Counsel, how would you like us or are you urging us to define public interest? Well, I think that's a very good question because the public interest is so for C-2, that is really the basis that the State is arguing against, not really C-3, the public interest. C-2 states that relief can be only granted if the person's reputation and their criminal history are such that they are not likely to act in a manner dangerous to public safety. And that's the criminal history portion of it. And that's already been conceded. The State agrees that Mr. Evans is satisfied that he is not dangerous to the public safety despite his criminal history. So are you urging that it's the same? No, I would say that they're different. I mean, when there's a list in a statute, we read those to be different items. So there has to be some other public safety element to it. So, I mean, it wouldn't involve – it really isn't the danger. Maybe if, like, there were a situation that – just popping out. Like, maybe Mr. Evans, if he were a safe person, but he lived with people that are unsafe, then it would be against the public's interest, potentially, to grant him firearm rights if he's going to own firearms and have them in a place where, like, if you had roommates that were dangerous, the public may not want those – his roommates to have access to firearms. So that could be a potential situation where it would be counter to the public interest. But he himself is not likely to act in a manner dangerous to public safety. So is there anything else? I think C-3 is meant to be more of a catch-all, fail-safe, where most of the analysis, most of the determination of – the individual determination of the petitioner is C-2. But C-3 is a catch-all that is – maybe there are things we haven't thought of yet, but are relevant to this analysis, whether it should be granted or not. And that's really what C-3 is. Because, I mean, you could also come up with reasons that it's policy-based, that maybe we don't – again, we don't know why Judge Mullen denied based on public interest, but potentially it could have been that it's against the public interest to grant a void card to someone that is violating federal law. Like, we don't want people – it's in the public's interest to not have people violating federal law. So if C-4 isn't met, then C-3 isn't met as well. Well, is public interest specific interest, or generic interest, or both? I'm not sure I understand as far – I think it's – I mean, you're giving different examples. Correct. Some of your examples are in particular – Oh, right, right. Some of your examples are – I think it could potentially be either, because it's undefined as far as what is the public interest. I think it can be a broad policy standpoint, as in the second example, but it certainly would apply for an individualized situation as well. I mean, there are a lot of reasons why the public is interested in firearm rights. So with respect to why – where that element comes into play, where it becomes satisfied, I think it can be either. Based upon this being undefined and the court has to be satisfied, isn't it imperative that we know the trial court's reasoning here? I think that it is potentially – yeah, I think that is important, because the – we're basically speculating at this point as to where the trial court is. But again, the lack of a record then falls on you. I don't think that the conclusions would be in the record either way. Like, the order stated by the – given by the trial judge doesn't give the basis, doesn't give the reasoning. Like, even if there were oral arguments, the judge didn't decide at the oral arguments. It was later that he – How do we even know that? We don't have a transcript of the oral argument. That – correct? I mean, that's certainly true. And we'd ask for a bit of leeway just because Mr. Evans, I mean, he filed pro se. He's – this is not – you know, it's not something that he's familiar with. It's not something that the, you know, lay person is generally going to have experience in. I mean, he did a pretty good job of bringing in the record, but for this event that he didn't even know happened until after the fact. But there's no requirement for a person to be present in order to secure a bystander's report. They could secure a bystander's report through other means. Correct. Yes. And, again, I would just simply ask for just a little bit of leeway for Mr. Evans, who did not even understand what that is, what that constitutes, and certainly that was required. But I don't think that it changes anything with respect to the satisfaction of C-3, the public interest. I think with the de novo review, we're able to look at Mr. Evans' life. I mean, he is the prototype for a person that has changed their life around that, is by this very – Section 10 exists to restore the firearm rights, an individual analysis of a person who – yeah, we take away firearm rights from felons because we don't trust them. But then we look individually at their life to see if they've earned that trust back. And Mr. Evans has. And that's what the first district concluded, and we ask that you would affirm that. Are there any other questions? Thank you, Mr. Evans. Thank you. Ms. Buell. Good morning, Your Honors, and may it please the Court. Assistant Attorney General Caitlin Buell, on behalf of Respondent Appelese. The General Assembly intended that those who have an Illinois conviction that is a felony and were federally prohibited from possessing firearms under federal law have an opportunity to potentially remove their federal firearm prohibitor and obtain a FOID card through operation of state law. All parties here agree that although the FOID Act initially bars an individual with a felony conviction from possessing a FOID card, the Federal Gun Control Act, Section 1.1a of the Unauthorized Use of a Weapon by a Felon Statute, or the UUWF Statute, and Section 10 of the FOID Act work together in order to provide an opportunity to restore those federal firearm rights and, if successful, obtain a FOID card. Although this is exactly what the General Assembly intended, the Illinois Appellate Court read the UUWF Statute and the FOID Act together to make a never-ending statutory loop that created a permanent ban on firearm possession. There may be two reasonable constructions of these statutes, but all parties agree that the Appellate Court's interpretation leads to absurd and potentially unconstitutional results. Instead, this Court should honor the General Assembly's intent and rely on the interpretation advanced by the Illinois State Police, the agency that is charged with administering the FOID Act. Under this interpretation, the reference to Section 10 of the FOID Act within the UUWF Statute should be interpreted to require an examination of only Sections 10c1-3, not 10c4, when removing the federal firearm provision caused by a felony conviction. Of course, while all parties agree that Evans was entitled to this opportunity to remove his federal firearm conviction that is caused by his controlled substance conviction, the Appellate Court erred in concluding that granting Evans a FOID card here was not contrary to the public interest. Indeed, after an evidentiary hearing, the Circuit Court correctly concluded that Evans had not met his burden to show that granting him a FOID card was not contrary to the public interest. Under any standard of review, one could not conclude that Evans has met that burden considering his serious felony convictions for drug offenses as well as his history of arrests and interactions with law enforcement, which have not been explained away. What factors determine public interest? It is a holistic test overall. There is not a specific factor test. It is intended to be somewhat of a catchall. Here we have the criminal history that's overlapping with the public interest, but you also must look at things like an individual's acceptance of responsibility, their sustainability to possess firearms overall, the overall nature of the convictions themselves, how dangerous they were, the impact, and it's really a totality of the circumstances test. And that's also, I would like to point out, the Illinois Circuit Courts, when they're considering these cases, are doing so under Section 10A of the FOID Act, and that specifically enumerates certain offenses that are allowed to go to the circuit court. In all other circumstances, these sorts of removals go to the director of the state police, and so the director of the state police is also performing this sort of review about public interest, and the state police really looks at the totality of the circumstances as well as what is going on in communities, what the offenses were, all of those sorts of things. Do you know what was presented before the state police? What kind of evidence or whatever would happen? Yes, we do know. That is in the record. That is part of Illinois State Police's business file, which is in the record, and it was the same evidence that was presented to the circuit court itself. The affidavits. The affidavits, the letters from Mr. Evans' wife and, I believe, several of his friends and acquaintances. Yes. Turning back to my first point, this court should give those with Illinois felony convictions who are federally prohibited from possessing firearms the opportunity to remove that federal prohibitor and, if successful, possess a FOID card by interpreting the reference to Section 10 of the FOID Act within the UUWF statute to include Sections 10c1 through 3 of the FOID Act, not Section 10c4. The fundamental rule of statutory construction is to ascertain the legislature's intent, and in doing this, the court looks to the statute's plain language, which requires it to consider the statutes in their entirety without reading provisions in isolation. This court presumes the constitutionality of these statutes and recognizes that there is no superfluous statutory provision and that the General Assembly did not intend to create any injustices when enacting  Kagan Ms. Buol, do you think that it's the manifest weight of the evidence for our review of the standard of review for the contrary to public interest? I believe that it would be here simply because we do not have a full record. I was just going to say we don't have any factual findings from the circuit court, so how could we do manifestly? Overall, if this Court believes that we need a little bit more development of the factual record in this circumstance, since Mr. Evans did not meet his burden to show that he was entitled to a FOID card or his burden to show that or his burden to produce a full record, this Court could remand to the circuit court for additional factual findings. Here, all parties, including ISP, the agency that is charged with administering a FOID act, agree that the General Assembly intended to grant those with former Illinois felony convictions who are federally prohibited from possessing firearms the opportunity to remove that firearm prohibition under state law. The language of the UUWF statute indicates that ISP or the circuit court, where applicable, could grant relief potentially to a person like Mr. Evans and remove his firearm prohibitor, thus clearing the way for him to be able to have a FOID card. In 1989, the UUWF statute was passed by the General Assembly in part to give relief from this federal prohibition on firearms through state law. Before the 2013 amendments to the FOID act, the decision maker who was considering this removal of a federal firearm prohibition would consider only sections 10c1-3 of the FOID act. So looking at things like whether someone had been convicted of a forcible felony within 20 years, whether the applicant's reputation and criminal history made them likely to act in a manner dangerous to public safety, and whether granting relief was contrary to the public interest. 10c4 was not part of the equation. It was added in 2013 to ensure compliance with a variety of different state laws, but this sort of relief for felons was never specifically addressed, nor was it the focus. Nevertheless, the provision granted an opportunity for relief for felons in the UUWF statute was not repealed when section 10c4 was added to the FOID act. Thus, to ensure that that provision is not superfluous and to ensure that we can effectuate the General Assembly's intent, one should read this statute to only encompass sections 10c1-3 of the FOID act. Evans argues that section 10 in and of itself indicates that one can remove their federal firearm prohibitor simultaneously to granting a FOID card. That, too, could be a reasonable interpretation of the statute, and when a statute is being capable of understood in more than one manner, the statute is ambiguous, which requires this Court to take a look at the drafting history and legislative history to fully understand the General Assembly's intent. And contrary to Evans' interpretation, the Illinois State Police's interpretation of section 10 and the UUWF statute align consistently with the legislative history of this provision. The General Assembly intended that it was section 1.1a of the UUWF statute that would provide Illinois individuals with their felony convictions the opportunity to remove their federal firearm prohibitions through state law. The senator who sponsored the bill stated it would ensure that felons had the opportunity to obtain firearms, and the House sponsor stated that an individual in this position could receive individualized relief from the Illinois State Police and state law, and that would require an examination of the severity of the obtain this relief rather than waiting for relief from the federal government. This law actually remains in effect today, and it was not repealed or discussed when 10c4 was added. Moreover, interpreting these statutes is consistent with this Court's decision in Johnson. This Court in Johnson avoided potential constitutional problems by following established canons of statutory interpretation, and that is what we are asking this Court to do today. While all parties agree that Evans is entitled to the opportunity to remove his federal firearm federal prohibitor through the UUWF statute in Section 10 under any standard of review, he is not entitled to relief because he did not meet his burden to show that granting him a FOIA card was not contrary to the public interest. The circuit court here heard evidence and decided that Evans failed to meet that burden. He has two possession of controlled substance offenses that were sufficiently serious, and for these sorts of serious drug offenses and violence, there is understandably a link between these sorts of drug offenses and increased violence, which is not in the public interest. What's the time frame between the drug offenses and the time he applied for the FOIA card? About, I believe, about 20 years. In addition to this. Is there a bright line on how long it should be? No, there is no bright line, Your Honor. There are some individuals who maybe after a few years might be able to, and sometimes given the circumstances of the offense, might be a long period. That's why this really is a totality of the circumstances situation that requires the circuit court in this particular instance to look at the individual's personal notarized statements, letters from others, and their overall offense and criminal history. So you're saying it's a catch-all? It is a catch-all. But the term is not a term. Public interest is not defined anywhere. It's not fully defined. No. Was there any violence involved in the offenses? That is something that I can't tell you. All I know is the only that, what the offenses were, that they were a Class X felony and a Class II felony, and they involved the manufacture and distribution of more than 15 grams of cocaine and the manufacture and deliver of a substance that was an analog to LSD. But we don't have a transcript of what went on in this record. We don't know if individuals talked about the circumstances of these convictions or of other arrests, including the 2008 arrest, which was stricken with leave to reinstate for battery. You mentioned earlier remanding for additional factual findings. Do we know if there were any factual findings made on the record at the hearing? I can't. I don't know. So are you conceding that we should remand for factual findings or presume that the ruling was in conformity with the law? I think that overall, on this record, under any standard of review, it's clear that Mr. Evans hasn't met his burden. But if this Court would like to remand for additional factual findings on the public interest point, it certainly could. What makes the clarity that he hasn't met the burden of the fact that there was a finding? There are no specific factual findings. He didn't meet his burden. I don't know what was discussed at the hearing. However, just looking at this overall criminal history record and the circumstances that are apparent, it is clear that these are very serious drug offenses. And it's also clear that Mr. Evans, despite having his 20 to 24 years ago, right? Indeed. But these aren't his only interactions with law enforcement. Even after he served his sentence for those serious drug convictions, he was arrested again in 1999 for possession of a controlled substance. And 2008 for a battery. And he hasn't explained why he has not been convicted. He was not convicted. But he hasn't explained the circumstances surrounding this, particularly with the 2008 battery that was stricken with lead to reinstate. Is the public interest matter a discretionary call with the Court? Yes. I believe it is within the Court's discretion for those offenses that are within Section 10A based on an overall holistic totality of the circumstances inquiry. Do other arrests go to the criminal history section or to the public interest section? I think they would. Other arrests without conviction. I think that they would go to both, actually. Overall. No information about the arrests? Just a simple fact of the notice? It's true that arrests are not normally considered, but the Floyd Act specifically asked the decisionmaker to take a look at reputation, history, and arrests. And overall, in a totality of the circumstances view, I believe that the decisionmaker here, the circuit court, could take a look at those arrests and maybe even ask about them during a hearing. But again, I don't know exactly what has happened during that hearing. Is there any clarity on the standards to be used by the decisionmaker? The General Assembly left it to the decisionmaker to decide within their satisfaction as to whether individuals could show that it was contrary to the public interest or if their criminal history and reputation were such that they would be in a manner dangerous to public safety. It's really a case-by-case basis. In some circumstances, someone might be able to possess a firearm much more quickly than in other circumstances. People are all different. And so it really, having a bright-line rule of you get one here and one not here is not the most workable. It doesn't appear we're talking about bright lines at all. We're just talking about absolute discretion. Right? Overall, it's to the decisionmaker's satisfaction. So I believe it would be within their discretion. So is the standard of review abusive discretion? The standard of review here I think would be under the manifest weight of the evidence given the fact that we know that there was a hearing, but we don't have the actual transcript of that hearing. The individual factual findings themselves might be for an abusive discretion. You did say the arrests are not normally considered. Why were they considered this time? There were two arrests but no convictions since the 20-plus years? The arrests can be considered. I'm sorry if I misspoke before. The arrests overall could be considered. They can be, but not normally, you said. No. You would consider the totality of the circumstances, which might include arrests before the conviction, arrests after the conviction, other convictions, the overall criminal history of an individual. What about ordinance violations? I mean, how broad is this? I think that to the extent that that was something that the decisionmaker was interested in, they could certainly ask about it. For example, when ISP itself is considering a felony appeal under Section 10A, it looks to the administrative code, Section 1230.7DC, which also says that ISP can ask for any other reasonable documentation requested by the Department related to the determination of granting relief. So presumably ISP could ask about those things if it deemed them relevant. If there are no further questions, we would ask that this Court affirm the appellate court's judgment, though for the reasons stated here today and in our appellee's  Thank you. Thank you, Ms. Beard. With respect to the additional arrests, I would agree with the State insofar as normally they're not considered arrests without conviction, and that, yes, the Section 10C does allow for that totality of criminal history to be considered, but that is in Section 10C2. That's what gives the jurisdiction to consider the criminal history of the Petitioner. And it specifically refers to prior arrests? It doesn't say prior arrests. It says of a conviction, reputation and criminal history. So criminal history could even potentially be actions taken without arrest. But that is solely within Section C2. And C2 has been conceded. There's no evidence, there's no counterpoint, no basis by the State for the public interest that doesn't fall within the scope of C2, which has already been conceded. So the Court should affirm the First District's conclusion that C3 was satisfied by Mr. Evans, by his life history, by the affidavits supporting his rehabilitation. This is the type of person that should be granted this individualized relief. And so on the 2008, there was a battery charge. It was dismissed with leave to refile, and that's all we know in the record? That's all we know. Counsel, did he receive notice of the hearing? He did not. His attorney appeared at the oral arguments, but he did not even know that it was going to take place, no.  He, it's in the record that he, in his brief that he filed to the public court, that he did not, yeah, he said that his attorney did not tell him that he, that there was any sort of event with oral arguments or a hearing or otherwise that was taking place. It's in the brief. It's not supported by a separate affidavit. Standard review is very troubling because even if, even if the fact finder is just looking at all these documents and then the judge or whether it's state police, whoever's finding the facts under the statute, you know, we get to the satisfaction. It just, even if they're looking at purely documents, are we then supposed to de novo, look at those documents and see whether they satisfy us? I mean, is that what you're asking us to do? I would say that would be the appropriate standard review just as the first district found. But in the alternative, we'd agree that remanding it to the circuit levels so that we could conduct an actual evidentiary hearing without the federal law question sullying whether this is even appropriate or not would be an appropriate alternative remedy. I'm trying to understand about what would we do if there was a remand. If you say, well, remand it, would we direct the people to put on evidence then? Is that what you would be asking? I didn't hear the last part of the question. You'd be asking us to direct the two sides to put on evidence that wasn't put on before? It would be very unusual. It would be remanding for further proceedings for the actual evidentiary hearing that never took place. Mostly it would be directing the circuit court to overturn the determination of C-4 and then further proceedings consistent with that finding. So then that would allow for the opportunity to have the evidentiary hearing and we can produce witnesses. We can have Mr. Evans testify to the satisfaction of the circuit court. Mr. Evans didn't have an opportunity to testify. He did not. The oral arguments was based on the documentary evidence. So there was no hearing? No. Could there have been? The lawyer could have chosen to have an evidentiary hearing. I mean, I'm sure others have, too. Most of the cases I've seen under the statute, there's a hearing. People testify. And that could have happened here. I mean, I've seen situations for both. Especially when there's a question of law. Usually that gets settled first before bringing in witnesses and having them testify. But that is correct that it can be done, an all-encompassing hearing. But that's not what took place here. Mr. Evans wasn't there to testify. There was no witnesses that spoke. So it would be a remand for a hearing that didn't take place? Correct. This would be the actual hearing, then, rather than just oral arguments based on the question of law. Any more questions? Okay. Thank you. All right. Case number 125513, Alfred Evans v. Cook County State's Attorney v. State Police, will be taken under advisement as agenda number eight. Thank you, Mr. Chavez, and thank you, Ms. Buol, for your arguments this morning.